

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

DARRELL BAUGUESS
   Vs.
KENT S FOSTER

C.A. No.     2006 CA 005228 B

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MARY A. TERRELL
Date:  July 10, 2006
Initial Conference: 9:15 am, Friday, October 13, 2006
Location:  Courtroom 219
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Darrell Bauguess, 703 Pilot House Dr.,
Annapolis, MD 21401

*Plaintiff*

VS.

American Cellular Corp., c/o Ronald Ripley,
Gen. Coun. & Sr. VP, 14201 Wireless Way,
Oklahoma City, OK 73134

*Defendant*

0005228-06

Civil Action No. [                    ]

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

William H. Crispin. Crispin & Associates, PLLC
Name of Plaintiff's Attorney

555 13th Street, NW, Ste 420 West
Address

Washington, DC 20004

(202) 828-0153
Telephone

By _____
Deputy Clerk

Date [        ] 0 2006

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(f)-456/Mar. 91

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

IN THE
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Darrell Bauguess<br>703 Pilot House Drive<br>Annapolis, Maryland 21401<br>(301) 467-8009<br><br>and<br><br>Peter T. Lewis<br>3901 Jenifer Street, NW<br>Washington, DC 20015<br>(202) 277-9500<br><br>       Plaintiffs,<br><br>v.<br><br>Kent S. Foster<br>2801 McGill Terrace, NW<br>Washington, DC 20008<br>(202) 328-6622,<br><br>Lone Star Wireless, Inc.<br>c/o Kent S. Foster, President<br>2125 Sidney Baker<br>Kerrville, TX 78028<br>(830) 895-8700,<br><br>and<br><br>American Cellular Corporation<br>c/o Ronald Ripley, General Counsel<br>  and Senior Vice President<br>14201 Wireless Way<br>Oklahoma City, OK 73134<br>(405) 529-8500<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

0005228-06

RECEIVED
Civil Clerk's Office
JUL 13 2006
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

Plaintiffs Darrell E. Bauguess and Peter T. Lewis hereby complain against

defendants Kent S. Foster, Lone Star Wireless, Inc. ("Lone Star") and American Cellular

Corporation ("American Cellular") as follows:

## I.     NATURE OF THIS ACTION

1.     This action is brought against defendant Kent S. Foster for breach of a

settlement agreement dated May 9, 1995 and for fraudulently inducing Plaintiffs to enter

into that agreement.  This action is also brought against Defendants Lone Star, a

corporation wholly-owned by Kent Foster, and American Cellular for tortiously

interfering with the settlement agreement.

2.     Foster executed the settlement agreement just prior to a jury trial of a

breach of contract action that the Plaintiffs had brought against him in this Court in 1992

styled Lewis Telecom Inc. et al. v. Foster, Civil Action No. 92-CA-16295, (the "Lewis

Telecom Lawsuit").  In the settlement agreement, Foster promised that Plaintiffs would

be notified within ten days of execution of a contract to assign the license to a cellular

system he owned ("the Texas-15 License"); that any assignment agreement would

contain a provision whereby monies due Plaintiffs under the settlement agreement would

be paid to an escrow agent, Stuart Feldstein, Foster's Washington, D.C. lawyer, for

payment to Plaintiffs; and that Plaintiffs would be paid out of the assignment proceeds at

the closing of the assignment transaction (the "Promised Terms").  Plaintiffs insisted on

the Promised Terms to ensure Foster's payment to them.

3.     Defendant Lone Star executed an agreement to assign the Texas-15

License to American Cellular in or about early April 2006, and the parties consummated

the assignment transaction at a closing on June 28, 2006.  Foster breached the settlement

agreement by failing to notify Mr. Feldstein, the escrow agent, of the executed assignment agreement so he could notify Plaintiffs within ten days of its execution, by failing to include the required escrow provision in that assignment agreement, and by failing to cause the sum of $1.865 million, the amount due Plaintiffs at the closing, to be placed with Mr. Feldstein.

4.    Defendants Lone Star and American Cellular tortiously interfered with the settlement agreement by preventing performance of the Promised Terms. Plaintiffs provided Defendants Lone Star and American Cellular with the settlement agreement prior to the closing. Despite actual knowledge of its terms, American Cellular failed to place $1.865 million with Mr. Feldstein at the closing, and Lone Star improperly received that sum at closing for the benefit of Kent Foster, its sole owner.

## II.    PARTIES

5.    Plaintiff Darrell E. Bauguess resides at 703 Pilot House Drive, Annapolis, Maryland 21401. Mr. Bauguess is a party to the settlement agreement.

6.    Plaintiff Peter T. Lewis resides at 3901 Jenifer Street, NW, Washington, DC 20015. Mr. Lewis is a party to the settlement agreement.

7.    Lewis Telecom was a Maryland corporation with its principal place of business located at 3901 Jenifer Street, NW, Washington, DC 20015 and is a party to the settlement agreement. At all times relevant hereto, Peter T. Lewis was the president and sole owner of Lewis Telecom. Lewis Telecom, for valuable consideration, assigned its rights under the settlement agreement to Mr. Lewis.

8.     Defendant Kent S. Foster is a resident of the District of Columbia who resides at 2801 McGill Terrace, NW, Washington, DC 20008. Mr. Foster is a party to the settlement agreement. Foster owns 100% of Lone Star.

9.     Defendant Lone Star is a Texas Corporation that has its principal place of business at 2125 Sidney Baker, Kerrville, TX 78028. Lone Star held the Texas-15 License until Mr. Foster, as its President, assigned it to American Cellular on June 28, 2006.

10.     Defendant American Cellular is a Delaware Corporation that has its principal place of business at 14201 Wireless Way, Oklahoma City, Oklahoma. It is a wholly-owned subsidiary of Dobson Communications Corporation, an Oklahoma corporation. American Cellular acquired by assignment the Texas-15 License from Lone Star on June 28, 2006.

### III.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to Section 11-921(a)(6) of the D.C. Code. This Court has personal jurisdiction over defendant Foster pursuant to Section 13-422 of the D.C. Code. To the extent that Mr. Foster claims to reside in Texas, this Court has personal jurisdiction over him in this action pursuant to Section 13-423(a)(1) in that he transacted business with Plaintiffs in the District of Columbia. The claims for relief herein arise from Foster's negotiation and execution of a settlement agreement in the District of Columbia to resolve the Lewis Telecom Lawsuit in this Court.

12.     This Court has personal jurisdiction over defendants Lone Star and American Cellular pursuant to Section 13-423(a)(3) in that they caused tortious injury in

the District of Columbia by performing the terms of their assignment agreement in the District of Columbia and by failing to pay the sums due Plaintiffs to the escrow agent, Stuart Feldstein, a Washington, D.C. lawyer. Alternatively, even if the closing occurred outside the District of Columbia, this Court has personal jurisdiction over defendants Lone Star and American Cellular pursuant to Section 13-423(a)(4) in that they caused tortious injury in the District of Columbia by an act or omission outside the District of Columbia and they, or their agents, regularly do business or engage in a persistent course of conduct in the District. Both defendants are FCC licensees who are represented by Washington, D.C. counsel who, as their agents, regularly conduct business on their behalf in the District, including appearing before the FCC.

## IV.    EVENTS REQUIRING RELIEF

13.    In 1992, Bauguess, Lewis and Lewis Telecom filed the Lewis Telecom Lawsuit in this Court against Kent Foster for breach of contract. That suit was settled after this Court ordered the parties to a mandatory settlement conference just before a jury trial scheduled for May 15, 1995. The parties executed the settlement agreement on May 9, 1995, a copy of which is attached hereto at Exhibit A. They submitted a Praecipe to the Court on May 10, 1995 advising the Court of their settlement and requesting that the case be dismissed. A copy of the Praecipe is attached hereto at Exhibit B.

14.    Pursuant to the settlement agreement, Foster agreed to pay Plaintiffs $1.1 million plus interest "upon assignment of the license," except to a corporation owned by Foster. It further provided for the payment and accrual of interest until Plaintiffs were paid in full. The settlement agreement stated that the sum of $1.1 million "shall" increase by 10% if Plaintiffs are not paid 18 months after October 3, 1995. The sum "shall"

increase each year thereafter by the annual Consumer Price Index. If the sum is still

unpaid 48 months after October 3, 1995, the sum shall increase each year thereafter by

the Chase Manhattan prime rate plus 1% simple interest not compounded, until paid. The

settlement agreement further provided that Mr. Feldstein "shall" notify Plaintiffs within

ten days of the signing of an agreement to assign the Texas-15 License, that an

assignment agreement "shall" include a clause providing for payment of the funds due

Plaintiffs to Mr. Feldstein, as escrow agent, and that Mr. Feldstein "shall be obligated" to

pay Plaintiffs "at the time of closing."

     15.     Plaintiffs Bauguess and Lewis performed each and every one of their

obligations under the settlement agreement.

     16.     Foster has not performed under the settlement agreement. Upon

information and belief, in early April 2006, Foster, on behalf of Lone Star, entered into

an agreement with American Cellular to assign the Texas-15 License, and other licenses,

for approximately $25 million. Plaintiffs only learned of this assignment agreement at

the end of April 2006 when they read an FCC public notice disclosing Lone Star's filing

of an assignment application at the FCC earlier that month. Plaintiffs never received the

ten-day notice from the escrow agent that the assignment agreement had been executed

because, upon information and belief, Foster never notified the escrow agent, in violation

of the settlement agreement.

     17.     Prior to closing, Plaintiffs' counsel provided Lone Star and American

Cellular with a copy of the settlement agreement. Plaintiffs' counsel demanded a copy of

their assignment agreement to see if it was compliant with the settlement agreement or

written assurances that the assignment agreement would be reformed to include the

required escrow provision. American Cellular and Lone Star refused to do either. Instead, American Cellular represented that it would place the sums owed Plaintiffs into escrow at the time of closing if it received instructions from Lone Star to do so. Lone Star then wrote American Cellular instructing it to place $2 million into escrow at closing. American Cellular represented to Plaintiffs' counsel that it would alternatively interplead the sums due Plaintiffs into the court's registry at the time of closing.

18.    Lone Star and American Cellular consummated the assignment agreement at a closing on June 28, 2006. Upon information and belief, Defendants Lone Star and American Cellular failed to include the required escrow provision in their assignment agreement. Defendant American Cellular failed to place any funds into escrow or interplead any funds into the court's registry at the closing.

19.    Upon further information and belief, Lone Star had no intention of honoring its representations to require American Cellular to place $2 million into escrow at the time of closing when it made such representation. Lone Star only so represented to prevent Plaintiffs from filing a temporary restraining order to enjoin consummation of the assignment transaction.

## V.    CLAIMS FOR RELIEF

### A.    COUNT ONE

(Specific Performance Against Foster)

20.    Plaintiffs reallege paragraphs 1 through 19 herein. The parties entered into a valid settlement agreement dated May 9, 1995 to resolve the Lewis Telecom Lawsuit. Plaintiffs fully performed all of their obligations and duties under the settlement agreement. Foster, on behalf of Lone Star, entered into an agreement to assign the Texas-

15 License to a third party, American Cellular, that failed to contain the required escrow provision. Foster failed to notify Mr. Feldstein, the escrow agent, of the execution of the assignment agreement. Lone Star consummated the assignment at a closing on June 28, 2006, and thus full performance under the settlement agreement was due on that date. Plaintiffs were not paid at the closing pursuant to the terms of the settlement agreement.

WHEREFORE, Plaintiffs Bauguess and Lewis respectfully request the following relief:

    (a)    that the settlement agreement be declared a valid and binding contract;

    (b)    that the terms of the settlement agreement be specifically enforced;

    (c)    that Foster pay Plaintiffs the sums owed under the settlement agreement plus pre-judgment and post-judgment interest; and

    (d)    such other relief as this Court deems just and proper.

## B.    COUNT TWO

(Fraud Against Foster)

21.    Plaintiffs reallege paragraphs 1 through 20 herein. Foster falsely represented in the settlement agreement that he would pay Plaintiffs $1.1 million plus interest as set forth therein at the closing of the assignment of the Texas-15 License. Foster made this statement with an intent to deceive Plaintiffs into executing the settlement agreement and with no intention that Plaintiffs would be paid at the closing. Foster claimed for the first time in the Spring of 2006 that the settlement agreement he entered into in 1995 was void as against public policy. Plaintiffs executed the settlement agreement in reliance upon Foster's representations that they would be paid the sums due

at the closing.  Plaintiffs were not paid at the closing.  Plaintiffs have suffered, and will continue to suffer, damages as a result of Foster's false representations.

WHEREFORE, Plaintiffs Bauguess and Lewis respectfully request the following relief:

    (a)    that Foster pay Plaintiffs the sums owed under the Settlement Agreement plus pre-judgment and post-judgment interest;

    (b)    that Foster pay Plaintiffs $1.865 million in punitive damages for his fraudulent representations;

    (c)    that Foster pay Plaintiffs costs, including their reasonable attorneys' fees; and

    (d)    such other relief as this Court deems just and proper.

### C.    COUNT THREE

(Tortious Interference with Contract Against Lone Star Wireless, Inc.)

22.    Plaintiffs reallege paragraphs 1 through 21.  A valid and enforceable settlement agreement exists between Plaintiffs and Foster dated May 9, 1995.  Prior to executing the assignment agreement with American Cellular, Lone Star knew of the existence of the settlement agreement and of the Promised Terms.  Lone Star has intentionally procured a breach of that contract by preventing performance of the Promised Terms by failing to notify Mr. Feldstein upon execution of its agreement with American Cellular, by failing to include in its agreement the required escrow provision, and by accepting funds owed Plaintiffs at closing that should have been placed in escrow for distribution to Plaintiffs or interpled into the court's registry.  Lone Star acted with

9

fraud, ill will, recklessness, wantonness, or willful disregard for the rights of Plaintiffs in

procuring the breach by representing to Plaintiffs that it would require American Cellular

to place $2 million in escrow at the closing when it had no intention of doing so and

instead was only making such representations to prevent Plaintiffs from seeking relief in

court to enjoin the closing.  Plaintiffs have suffered damages, and will continue to suffer

damages, resulting from Lone Star's tortious interference with their settlement agreement

with Foster.

WHEREFORE, Plaintiffs Bauguess and Lewis respectfully request the following relief:

      (a)    that Lone Star be held liable for tortiously interfering with the

            settlement agreement entered into between Plaintiffs and Foster; and

      (b)    that Lone Star pay Plaintiffs the sums owed to them under the

            settlement agreement plus pre-judgment and post-judgment interest;

      (c)    that Lone Star pay Plaintiffs punitive damages of $1.865 million for

            willfully, wantonly, fraudulently and recklessly interfering with the

            settlement agreement; and

      (d)    such other relief as this Court deems just and proper.

### D.    COUNT FOUR

(Tortious Interference with Contract Against American Cellular Corporation)

    23.    Plaintiffs reallege paragraphs 1 through 22.  A valid and enforceable

Settlement Agreement exists between Plaintiffs and Foster dated May 9, 1995.  Prior to

closing, American Cellular Corporation knew of the existence of the Settlement

Agreement and of the Promised Terms.  American Cellular intentionally procured a

breach of that contract by preventing performance of the Promised Terms by paying

directly to Lone Star and/or Foster the funds owed Plaintiffs at closing that it should have placed in escrow for distribution to Plaintiffs or interpled into the court's registry. Plaintiffs have suffered damages, and will continue to suffer damages, resulting from American Cellular's tortious interference with their settlement agreement with Foster.

WHEREFORE, Plaintiffs Bauguess and Lewis respectfully request the following relief:

    (a)    that American Cellular Corporation be held liable for tortiously interfering with the settlement agreement entered into between Plaintiffs and Foster; and

    (b)    that American Cellular Corporation pay Plaintiffs the sums owed to them under the settlement agreement plus pre-judgment and post-judgment interest; and

    (c)    such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a jury trial.

Respectfully submitted,

William H. Crispin (DC Bar No. 363770)
Lauren A. Greenberg (DC Bar No. 466846)
CRISPIN & ASSOCIATES, PLLC
555 13th Street, NW, Suite 420W
Washington, DC 20004
(202) 828-0152 – phone
(202) 828-0158 – facsimile
wcrispin@crispinlaw.com – e-mail

Attorney for Plaintiffs

**SLIP SHEET**
**INTENTIONALY LEFT BLANK**

## TERM SHEET

May 9, 1995

### I.   Parties

It is agreed that the terms and conditions of this agreement shall be executed by and between Kent Foster ("Foster"), Darrell Bauguess ("Bauguess"), Peter Lewis ("Lewis") and Lewis Telecom, Inc., as follows:

### II.  Price

Subject to the terms and conditions set forth herein Foster will pay the sum of one million one hundred thousand dollars ($1,130,000.00) to Bauguess, Lewis and Lewis Telecom in accordance with the terms herein. Said sum shall increase by 10% if Bauguess, Lewis and Lewis Telecom, Inc., are not paid 18 months after the grant of Foster's Texas-15 Concho authorization. Said sum shall increase each year thereafter by the annual Consumer Price Index of January of that year. If said sum has not been paid 48 months after grant of the authorization then said amount will increase each year thereafter by the Chase Manhattan prime rate plus 1% simple interest not compounded, and;

### III. Payment

Payment of the applicable price shall be payable by cash and/or marketable securities; (e.g. securities traded on the New York, American or NASDAQ stock exchange), or other securities so long as the securities are marketable on the date of the transfer of the license and are valued at the agreed upon consideration. Prepayment of said securities to the trustee prior to the date of sale shall release the pledge obligations of this agreement so long as said securities are valued at the agreed upon consideration as of the date of sale, and;

### IV.  Payment Due Date

The applicable sum of money is due and payable upon transfer of a controlling interest (50.1%) in the Texas-15 authorization or

upon an assignment of the authorization (except for an initial pro-forma assignment of the authorization to a U.S. corporation of which Foster is sole shareholder). The death of Foster and the transfer of his shares to his heirs or designated beneficiaries shall not constitute a transfer of controlling interest under this section. The purchase agreement for any such transfer or assignment shall include a clause providing that Stuart Feldstein ("Feldstein"), presently affiliated with the law firm of Fleischman and Walsh, will serve as escrow agent. Feldstein shall be obligated to pay the applicable sum of money to Bauguess, Lewis and Lewis Telecom at the time of closing. Bauguess, Lewis and Lewis Telecom shall be notified by Feldstein within 10 days of the signing of a sales contract, and;

V.    Security

Bauguess and Lewis shall be provided a pledge of 20% of the stock in the permittee/licensee by Foster. Should Foster need to pledge 100% of the stock of the permittee/licensee for a loan for any amount, the 20% stock pledge shall be subordinated without notice on a one time basis. Any further loan(s) shall wrap around the subordinated pledge and will be inferior as to the 20% except for the subordinated loan. The stock pledge shall be limited to the subordinated 20% and shall not extend in any manner to the remaining percentage of the issued and outstanding stock, except as provided below.

The percentage of the stock representing the pledged amount shall equal the sum of two million five hundred thousand dollars ($2,500,000.00). After Foster's first loan, if any, Bauguess, Lewis and Lewis Telecom's subordinated pledge shall equal a sum of $2,500,000.00. The parties agree that prior to Foster's first initial loan, Foster will have Texas-15 appraised by one of the following companies to appraise the fair market value for an ongoing built cellular system in Texas-15: EMCI, Kagen, Columbia Capital, BIA, Harrison, Bond & Pacaro, and Daniels & Associates. Foster's first loan can be any sum up to the original appraised value minus $2,500,000.00 (hereinafter referred to as the "Original Appraised Value"). The parties further agree that the first appraisal of Texas-15 will be paid in full by Bauguess, Lewis and Lewis Telecom.

The parties agree if Foster chooses to take out additional loans, the total indebtedness for Texas-15 shall not exceed the appraised value minus the subordinated pledge in the sum of $2,500,000.00. The parties further agree that the appraised value of Texas-15 could increase or decrease the amount of the pledged stock. Each party shall have the option to obtain an appraisal of the full value of the Texas-15 system at their own expense. If the parties appraisals differ by 20% or less, the average figure shall

represent the appraised value of Texas-15. If the parties appraisals differ by more than 20%, Feldstein, as trustee of the pledge, shall acquire a third independent appraisal, the cost of which is to be split by the parties. The appraised value of Texas-15 shall equal the mean value between the three appraisals. It is agreed that any subsequent appraisals that result in a diminished value of the system of any amount will not result in a breach of this agreement in that Foster shall not have to pay down any debt if the appraised value drops below the original appraised value. The value of the pledged stock shall be calculated by dividing the current appraised value by the sum of $2,500,000.00. Feldstein shall also serve as escrow agent under the pledge provision, and;

## VI.  Lawsuits

It is agreed between the parties that the lawsuits currently pending in Washington D.C. and the State of Texas shall be stayed until a final decision is made on Foster's Texas-15 application. If the Texas-15 application is dismissed, the terms and conditions set forth in this agreement shall be null and void. Thereafter, the pending lawsuits can be activated by the parties.

If Foster's Texas-15 application is granted and payment in full is not made within 18 months after the grant, Bauguess, Lewis and Lewis Telecom shall have the option of declaring this agreement null and void, proceeding with the lawsuits, or abiding by the terms and conditions of the agreement and the escalator of CPI and interest as defined and set forth in paragraph I.

If Foster's Texas-15 application is granted and payment in full is made within 18 months thereafter, the lawsuit in Washington, D.C. and the State of Texas shall be dismissed with prejudice, and;

## VII. Releases

Full, standard mutual releases shall be executed by and between Foster, Bauguess, Lewis, and Lewis Telecom and their respective companies at the time that the lawsuits are dismissed with prejudice and a take nothing judgment entered in favor of the defendant, and;

## VIII. Dismissal of Rita Capobianchi's Petition to Deny

As of the date provided in section XI herein, Rita Capobianchi ("Capobianchi") shall file a petition to withdraw her Petition to Deny currently pending at the FCC. The petition shall be drafted and approved by Feldstein and shall be signed by the undersigned counsel for Bauguess and Lewis who are also counsel for Capobianchi and who have authority to act in her behalf (or, in a form attached

hereto). Further, counsel for Capobianchi will inform Sally Novak at the FCC, that he will not be presenting a proposed order on May 31, 1995, and that he is withdrawing his client's petition to deny and would encourage the Commission to issue the Texas-15 permit to Foster at the very earliest date. Said letter will be drafted by Feldstein for counsel's signature.

Capobianchi further agrees to forward a letter to Foster indicating same in a form attached hereto.

It is understood that Foster is paying no consideration to Capobianchi for her petition to withdraw her petition to deny. Further, there will be no releases executed by and between Foster and Capobianchi, and;

IX.   Life Insurance

The parties agree that Foster's permittee/licensee shall procure and pay in full, all premiums for life insurance on Foster, Bauguess and Lewis. That the life insurance shall be in the initial amount of one million two hundred fifty thousand dollars ($1,250,000.00) each. That Bauguess and Lewis shall designate their respective beneficiaries. That Foster shall make the trustee of the pledge agreement his beneficiary. All parties agree that they will be cooperative and make themselves available for all insurance applications and examinations. The parties further agree that if Texas-15 is not sold and if the amount of the procured insurance will not cover the payoff of the pledge agreement, Foster's permittee/licensee will apply for additional coverage in $250,000.00 increments and that all parties will be available for the application/examination process. It is agreed by all parties that the death of any of the three parties and payment of insurance proceeds will pay the obligations under this agreement and will release the pledge, and;

X.   Controlling Agreement

The parties agree that upon execution of this Term Sheet, the terms and conditions set forth herein will serve as the controlling and binding agreement between the parties. The parties further agree that upon the execution of this Term Sheet by and between Foster, Bauguess, Lewis and Lewis Telecom, the terms and conditions set forth herein will be non-negotiable, and;

XI.   Pledge Agreement

The parties agree that they will have counsel draft all instruments necessary in the fulfillment of the obligations of this term sheet, including appropriate security documents and incorporation papers to implement the security provision, releases

as described in Part VII, and the dismissal of the Petition to Deny and letter described in Part VIII, which will all be executed simultaneously within two days of the signing of this Term Sheet.


_____
Darrell Bauguess


_____
Kent Foster


_____
Peter T. Lewis


_____
Lewis Telecom, Inc.

**SLIP SHEET**

**INTENTIONALY LEFT BLANK**

IN THE
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Lewis Telecom, Inc., et al.,    )
                                )
                Plaintiffs,     )
                                )
        v.                      )    Civil Action No. 92-CA 16295
                                )    Calendar 3
Kent S. Foster,                 )    Judge Richard A. Levie
                                )    Jury Trial
                Defendant.      )
                                )

## PRAECIPE

The parties to the above-captioned case hereby report that
the case has been settled, and the case is hereby dismissed
without prejudice.  The filing of this praecipe tolls the statute
of limitations as to all parties' claims, but shall not affect
the statute of limitations defenses as of the date of this
praecipe.  Pursuant to the settlement, upon request, the case can
be reinstated.  If reinstated, the case shall return to Calendar
3 for Pretrial Conference and trial.  Each party shall bear its
own costs.

Respectfully submitted,

By: _____    By: _____
    Jacob A. Stein                 William H. Crispin
    Robert Bredhoff                D.C. Bar No. 363770
    D.C. Bar No. 338103            Dean R. Brenner
    David U. Fierst                D.C. Bar 394385
    D. C. Bar No. 912899           Crispin & Brenner, P.L.L.C.
    Stein, Mitchell & Mezines      901 15th Street, N.W.
    1100 Connecticut Ave., N.W.    Suite 440
    Suite 1100                     Washington, D.C. 20005
    Washington, D.C. 20036         (202) 828-0153
    (202) 737-7777
    Attorneys for Defendant        Attorneys for Lewis Telecom,
    Kent S. Foster                 Inc. and Darrell Bauguess

**CERTIFICATE OF SERVICE**

I, Dean R. Brenner, hereby certify that a true and correct copy of the foregoing "PRAECIPE" was served by U.S. first class mail, postage prepaid, this 9th day of May, 1995, to:

> Jacob A. Stein
> Robert Bredhoff
> David U. Fierst
> Stein, Mitchell & Mezines
> 1100 Connecticut Avenue, N.W.
> Suite 1100
> Washington, D.C. 20036

Dean R. Brenner