**EXHIBIT 1**

Case 1:06-cv-01424-EGS    Document 11-2    Filed 09/07/2006    Page 1 of 19



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

STEIN MITCHELL & MEZINES, LLP
Vs.
KENT S. FOSTER

C.A. No.   2006 CA 006084 B

## **INITIAL ORDER**

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge NEAL E. KRAVITZ
Date:   August 9, 2006
Initial Conference: 9:00 am, Friday, November 24, 2006
Location:   Courtroom 415
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001   Telephone: 879-1133

| STEIN MITCHELL & MEZINES, LLP | |
|---|---|
| *Plaintiff* | 0006084-06 |
| vs. | Civil Action No. |
| KENT S. FOSTER, et al. | |
| *Defendant* | |

## SUMMONS

To the above named Defendant:
Edwards Angell Palmer & Dodge, LLP
Serve: Mark A. Pogue
2800 Financial Plaza
Providence, RI 02903

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Gary S. Marx, Esq. | By _____ |
| Name of Plaintiff's Attorney | Deputy Clerk |
| 2618 Washington Avenue | |
| Address | |
| Chevy Chase, Maryland 20815 | |
| (301) 588-1272 | Date   AUG 09 2006 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-446/Mar. 93

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| STEIN MITCHELL & MEZINES, LLP<br>1100 Connecticut Avenue, N.W.<br>Suite 1100<br>Washington, D.C. 20036<br><br>      Plaintiff<br><br>v.<br><br>KENT S. FOSTER<br>2801 McGill Terrace, N.W.<br>Washington, D.C. 20008<br><br>and<br><br>LONE STAR WIRELESS, INC.<br>2125 Sidney Baker<br>Kerrville, Texas 78028<br>    SERVE: Kent S. Foster, President<br><br>and<br><br>DAVID J. KAUFMAN<br>1301 Connecticut Avenue, N.W.<br>Suite 450<br>Washington, D.C. 20036<br><br>and<br><br>BROWN, NIETERT & KAUFMAN,<br>  CHARTERED<br>1301 Connecticut Avenue, N.W.<br>Suite 450<br>Washington, D.C. 20036<br>    SERVE: David J. Kaufman<br><br>and<br><br>AMERICAN CELLULAR CORPORATION<br>14201 Wireless Way<br>Oklahoma City, OK 73134 | 0006084-06<br><br>Civil Case No.<br><br>RECEIVED<br>CIVIL CLERK'S OFFICE<br>AUG 0 9 2006<br>SUPERIOR COURT<br>OF THE DISTRICT OF COLUMBIA<br>WASHINGTON, DC |

1

```
       SERVE:  Ronald Ripley, General Counsel  )
              and Senior Vice President         )
                                                )
                                                )
and                                             )
                                                )
EWARDS ANGELL PALMER & DODGE, LLP               )
2800 Financial Plaza                            )
Providence, RI 02903                            )
       SERVE:  Mark A. Pogue                    )
                                                )
              Defendants                        )
                                                )
_____     )
```

## COMPLAINT

Plaintiff Stein, Mitchell & Mezines LLP ("SMM") hereby sues defendants Kent Foster, Lone Star Wireless, Inc., David Kaufman, Brown, Nietert & Kaufman Chartered, American Cellular Corporation and Edwards Angell Palmer & Dodge, LLP for engaging in a scheme to circumvent an attorney's lien for $880,000 due from Kent Foster to SMM. SMM performed services for Foster over 10 years ago, pursuant to a written fee agreement that allowed Foster to defer paying SMM's $880,000 fee until he transferred a valuable cellular telephone license. Foster has now sold that license through his company Lone Star Wireless, Inc. to defendant American Cellular Corporation for approximately $25 million, but with the active assistance of the other defendants he avoided paying the fee he is obligated to pay. This Court has jurisdiction pursuant to District of Columbia Code §11-921. The amount in controversy exceeds, exclusive of interest and costs, the sum of $5,000.00

2

1. Stein, Mitchell & Mezines LLP is a limited liability partnership engaged in the practice of law, located at 1100 Connecticut Avenue N.W., Washington D.C. 20036.

2. Kent Foster is a former client of SMM, with a residence at 2801 McGill Terrace, N.W., Washington, D.C. 20008.

3. Lone Star Wireless, Inc. is a Texas corporation located at 2125 Sidney Baker, Kerrville, Texas 78028.

4. David J. Kaufman is a partner in Brown, Nietert & Kaufman Chartered, a law firm located at 1301 Connecticut Avenue N.W., Washington D.C. 20036.

5. American Cellular Corporation is a Delaware corporation, located at 14201 Wireless Way, Oklahoma City, OK 73134.

6. Edwards Angell Palmer & Dodge, LLP is a law firm located at 2800 Financial Plaza, Providence RI 02903.

7. In September, 1995 Kent Foster and Stein, Mitchell & Mezines ("SMM") entered into a written fee agreement arising from SMM's representation of Foster in Lewis Telecom, Inc. et al v. Kent Foster, C.A. 92-16295 in the Superior Court of the District of Columbia. Mr. Foster agreed to pay SMM $880,000.00 for its legal services and his payment was due at such time as he, or any company he controlled, transferred control of a cellular telephone license for RSA Market #666, Texas-15 Concho.

8. Foster agreed that $880,000 of the proceeds from the transfer of control of the license would at closing be paid to Stuart Feldstein at Fleischman & Walsh, 1919 Pennsylvania Avenue, Washington D.C. 20006, who was designated as the escrow agent, and Mr. Feldstein would convey SMM's fee to SMM no later than the net proceeds were to be paid to Foster. The agreement required Foster also to notify SMM of any contract to transfer the license.

9. Shortly after the Superior Court lawsuit against Foster was settled, Foster obtained the cellular telephone license in question from the FCC, and held it through a company known as Lone Star Wireless, Inc. Foster was the majority owner of Lone Star, and he controlled it.

10. On information and belief, in or about late 2005 or early 2006, Lone Star contracted to sell the license to American Cellular Corporation for a price in excess of $880,000.

11. Foster did not notify SMM, Mr. Feldstein or his other creditors of the impending sale of the license, and made no arrangements to place the proceeds in escrow.

12. The impending sale was disclosed to the public through a notice on the FCC website, which came to SMM's attention.

13. On April 26, 2006 SMM telephoned Larry Movshin, who, according to the FCC website, was the lawyer representing American Cellular. SMM gave him a full explanation of its claim and attorneys lien for $880,000. Mr. Movshin stated that Edwards Angell Palmer & Dodge LLP was handling the Texas-15 transaction for American Cellular.

14. Stuart Feldstein, the escrow agent designated in the fee agreement, was semi-retired in 2006. Mr. Feldstein put SMM in contact with Steve Hamrick, another partner in Fleishman & Walsh. Mr. Hamrick and SMM each contacted David J. Kaufman of Brown Nietert & Kaufman, Chartered (BNK), who was identified by the FCC as counsel for Foster's company, Lone Star.

15. At all relevant times herein, Kaufman was acting as a partner in BNK.

16. On or about April 26, 2006, both Mr. Hamrick and SMM provided Kaufman and BNK with a copy of SMM's fee agreement with Foster. SMM informed Kaufman that it was entitled to payment from the closing proceeds, that it had an attorney's lien on the proceeds in the amount of $880,000, and that the proceeds of the transfer of control of the license should not be distributed until that lien is satisfied.

17. Kaufman conferred with Foster, and responded orally on April 26, 2006 that Foster would honor the fee agreement, and that Mr. Hamrick and/or Mr. Feldstein would act as escrow agent for the proceeds from the transfer of the license. He also agreed that the escrow agent should distribute the fee in accordance with the fee agreement.

18. On April 27, 2006 SMM hand delivered a letter to Kaufman reciting his oral acknowledgements and representations. Kaufman responded by email later that same day, confirming the accuracy of SMM's recital of his oral acknowledgements and representations in all material respects. Neither at this time nor at any later time did either Foster or Kaufman dispute that SMM's fee

agreement was a binding contractual obligation that required Foster to pay SMM the fee set forth in the agreement.

19. Kaufman forwarded a copy of his email confirming that Foster would honor SMM's fee agreement, with a copy of the underlying SMM letter of April 27, 2006, to American Cellular's counsel, Zachariah Pencikowski, an associate with the firm Edwards Angell Palmer & Dodge LLP.

20. On May 1, 2006 Kaufman again represented orally to Steve Hamrick that Foster would honor SMM's fee agreement and that the necessary funds would be paid into escrow at the time of closing.

21. On May 16, 2006 Kaufman reconfirmed orally to SMM that Foster would honor SMM's fee agreement, and represented that closing on the sale of the license would be in the week following July 4, 2006.

22. On May 25, 2006 Kaufman again confirmed orally to SMM that Foster would honor SMM's fee agreement and pay the funds into escrow. He represented that closing could be as early as June 27, 2006.

23. In the afternoon of June 27, 2006 SMM received a call from Larry Geenwald, who identified himself as Foster's accountant. He said Foster wanted to negotiate a lower fee payment. At no time did Greenwald contest that the fee agreement between SMM and Foster was valid and binding. SMM refused to renegotiate the existing agreement.

24. Following the discussion with Greenwald, SMM spoke with Kaufman. Kaufman reiterated that Foster was bound by SMM's fee agreement, and would honor it. He said that Foster's obligation to pay SMM arose only if the transfer of

the license were consummated, and Foster was considering not closing the deal. Kaufman again reiterated that if the deal were closed, the money for the fee would be put in escrow for the benefit of SMM.

25. Kaufman represented that as of that time, approximately 5:30 p.m. on June 27, 2006, there was no date set for the closing.

26. Following that discussion, SMM received another call from Greenwald. Greenwald represented that because Foster had so many creditors he was considering whether the sale of the license made sense, and he wanted to renegotiate the fee agreement. SMM again refused to renegotiate its binding fee agreement.

27. On June 27, 2006, SMM also telephoned Leonard Slapp, a partner at Edwards Angell, and informed him of its lien and the contractual requirement that the requisite proceeds be placed in escrow. Mr. Slapp indicated that the closing had not yet taken place.

28. Shortly after 6:00 p.m. on June 27, 2006, SMM called Kaufman, who was not in the office, and left a voicemail that SMM expected Kaufman and Foster to honor SMM's fee agreement by placing $880,000 in escrow for payment to SMM. SMM also reminded Kaufman that he had repeatedly represented that Foster would honor the contract and that the money would be placed in escrow, and that SMM was relying on those representations. A letter summarizing these same points was hand delivered to Kaufman in the morning of June 28, 2006.

29. Kaufman responded by email at 1:01 p.m. on June 28, 2006 that he was resigning as counsel to Lone Star. He said nothing about the closing of the transfer of the license or the commitment to place funds into escrow.

30. SMM inquired by return email at 1:42 p.m. when and where the closing was to be held, and who was representing the buyer and seller at closing.

31. Kaufman did not respond, and a follow-up email was sent at 3:24 p.m. Kaufman responded by email at 3:34 p.m., identifying counsel for American Cellular, but professing ignorance of the scheduling of the closing.

32. On June 28, 2006, after receiving Mr. Kaufman's first email, SMM sent written notice of its lien to Mr. Slapp, Mr. Pencikowski, Mr. Movshin and Ronald Ripley, General Counsel of American Cellular. There was no response.

33. On June 29, 2006 American Cellular issued a press release asserting that the closing had occurred.

34. No sale proceeds were placed in escrow or paid to SMM.

35. The conduct alleged herein by Foster, Lone Star, Kaufman, BNK, American Cellular and Edwards Angell was undertaken with an evil motive, actual malice, deliberate oppression, with intent to injure and/or in willful disregard for the rights of SMM, and their conduct was outrageous, grossly fraudulent, or reckless toward SMM.

## Count 1

### Breach of Contract by Kent Foster

36. SMM incorporates by reference the allegations of paragraphs 1 to 35.

37. Foster was contractually obligated to pay a legal fee of $880,000 to SMM.

38. Mr. Foster was contractually obligated to assure that $880,000 in proceeds for the transfer of the license be placed into escrow for payment of SMM's legal fee.

39. Foster without valid justification, did not place $880,000 into escrow or pay it to SMM.

40. As a result of Foster's breach, SMM was injured.

### Count 2

### Fraud by Kent Foster and Lone Star

41. SMM incorporates by reference the allegations of paragraphs 1 to 35.

42. Foster and Lone Star represented through counsel Kaufman that Foster intended to honor his agreement to have $880,000 from the sale proceeds paid into escrow for payment to SMM.

43. This representation was false because Foster did not intend to honor SMM's fee agreement or to place $880,000 into escrow, and Foster and Lone Star knowingly made this representation with the intent to deceive SMM.

44. This representation was material to SMM.

45. SMM reasonably relied on that representation and did not take other steps to protect its interest, such as seeking a temporary restraining order.

46. As a result of Foster's and Lone Star's false representations, SMM was injured.

## Count 3

### Fraud by David Kaufman and BNK

47. SMM incorporates by reference the allegations of paragraphs 1 to 35.

48. Kaufman represented orally and in writing on multiple occasions from April 26, 2006 to and including June 27, 2006, that Foster would honor SMM's fee agreement and that the proceeds of the transfer of the license would be paid into escrow for payment to SMM.

49. Kaufman represented late in the afternoon of June 27, 2006 that closing had not yet been scheduled, and might not occur. He also represented on June 28, 2006 that he was ignorant of the scheduling of the closing.

50. Kaufman's representations were false, in that he knew Foster did not intend to honor his agreement, that the money would not be paid into escrow and that closing had been scheduled for June 28, 2006.

51. Kaufman knowingly made the false representations with the intent to deceive SMM.

52. These representations were material to SMM.

53. SMM reasonably relied upon these representations and did not take other steps to protect its interest, such as seeking a temporary restraining order.

54. As a result of Kaufman's false representations, SMM was injured.

## Count 4

### Negligence by David Kaufman and BNK

55. SMM incorporates by reference the allegations of paragraphs 1 to 35.

56. Kaufman undertook a duty to protect SMM's interest by assuring that the proceeds of the transfer of the license would be placed into escrow for payment to SMM.

57. Kaufman failed to exercise reasonable care or competence to assure that the money was in fact placed in escrow or to give timely notice to SMM that it would not be placed in escrow.

58. As a result of Kaufman's negligence, SMM was injured.

### Count 5

### Negligent Misrepresentation by David Kaufman and BNK

59. SMM incorporates by reference the allegations of paragraphs 1 to 35.

60. Kaufman represented orally and in writing on multiple occasions from April 26, 2006 to and including June 27, 2006 that Foster would honor SMM's fee agreement and that the proceeds of the transfer of the license would be paid into escrow for payment to SMM.

61. Kaufman represented late in the afternoon of June 27, 2006 that closing had not yet been scheduled, and might not occur. He also represented on June 28, 2006 that he was ignorant of the scheduling of the closing.

62. Kaufman's representations were false.

63. Kaufman failed to exercise reasonable care or competence in ascertaining the truth of the representations he made to SMM.

64. These representations were material to SMM.

65. SMM reasonably relied upon these representations and did not take other steps to protect its interest, such as seeking a temporary restraining order.

75. Foster and Lone Star, with the active assistance of Kaufman, BNK, American Cellular and Edwards Angell, nonetheless took the $880,000 from SMM with the intent of enriching themselves and depriving SMM of its rightful property.

76. As a result of defendants' unlawful conduct, SMM was injured.

### Count 9

### Breach of Fiduciary Duty by Kaufman and BNK

77. SMM incorporates by reference the allegations of paragraphs 1 to 35.

78. By agreeing to place the proceeds of the transfer of the license into escrow for the benefit of SMM and representing that such would be done, Kaufman and BNK undertook fiduciary duties owed to SMM.

79. Kaufman and BNK breached those duties by: failing to put the proceeds in escrow, providing false and misleading information to SMM, failing to alert SMM to the fact that the funds would not be placed in escrow, resigning as counsel to Foster and/or Lone Star in a manner that left SMM's interests unprotected, and withholding relevant and material information from SMM, such as the date and time of closing.

80. As a result of the breach of fiduciary duty by Kaufman and BNK, SMM was injured.

### Count 10

### Breach of Fiduciary Duty by Edwards Angell and American Cellular

81. SMM incorporates by reference the allegations of paragraphs 1 to 35.

82. American Cellular and Edwards Angell had a fiduciary duty to pay $880,000 of the proceeds of the license transfer into escrow for the benefit of SMM.

83. American Cellular and Edwards Angell failed to place the proceeds into escrow.

84. As a result of the breach of fiduciary duty by American Cellular and Edwards Angell, SMM was injured.

### Count 11

**Conspiracy to Commit Fraud and Theft Among Foster,
Lone Star, Kaufman, BNK, American Cellular and Edwards Angell**

85. SMM incorporates by reference the allegations of paragraphs 1 to 35.

86. Foster, Lone Star, Kaufman, BNK, Edwards Angell and American Cellular entered into an agreement to deprive SMM of a legal fee to which it was entitled.

87. Pursuant to their agreement, Foster, Lone Star, Kaufman, BNK, Edwards Angell and American Cellular made false and misleading representations, withheld material information, and surreptitiously transferred the license and proceeds under circumstances where SMM was not reasonably able to protect its own interests, thereby taking property rightfully belonging to SMM.

88. As a result of the conspiracy, SMM was injured.

### Count 12

**Tortious Interference With Contractual Obligation
by Edwards Angell and American Cellular**

89. SMM incorporates by reference the allegations of paragraphs 1 to 35.

90. Foster had a contractual obligation to pay $880,000 to SMM by having a sufficient portion of the proceeds from the transfer of the license placed into escrow by the purchaser, American Cellular.

91. Edwards Angell and American Cellular were aware of Foster's contractual obligation.

92. Edwards Angell and American Cellular interfered with Foster's contractual obligation and SMM's rights under the fee agreement by paying the proceeds directly to Foster.

93. As a result of Edwards Angell's and American Cellular's interference, SMM was injured.

## Damages

WHEREFORE, plaintiff SMM seeks the following damages, jointly and severally from all defendants:

1. Compensatory damages in the amount of $880,000;
2. Pre-judgment interest ;
3. Costs and reasonable expenses including attorneys fees;
4. Punitive damages in an amount to be determined at trial;
5. Such other damages as the Court may deem appropriate.

_/s/ Gary S. Marx_
Gary S. Marx (DC Bar #358683)
Marx & Lieberman
2618 Washington Avenue
Chevy Chase, MD 20815
gsmarx@marxandlieberman.com
(tel) 301-588-1272
(fax) 301-587-5011

15

## JURY DEMAND

Plaintiff demands a jury on all issues triable by jury.

_____
Gary S. Marx