**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Darrell Bauguess et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:06CV01424/ EGS |
| | ) | |
| v. | ) | |
| | ) | |
| Kent S. Foster et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO DEFENDANT AMERICAN CELLULAR CORPORATION'S**
**MOTION FOR LEAVE TO FILE A SUPPLEMENTAL OPPOSITION**
**TO PLAINTIFF'S MOTION TO REMAND**

Plaintiffs Darrell Bauguess and Peter Lewis hereby oppose American Cellular Corporation's motion for leave to file a supplemental opposition to plaintiffs' motion to remand. This motion should be denied because it asks this Court to consider facts and argument contained in an affidavit that American Cellular could have been provided with its opposition pleadings to Plaintiffs' Motion to Remand. Similarly, Plaintiffs request that this Court not consider the same affidavit Lone Star previously attempted to lodge with this Court. Lone Star did not even seek leave of court when it filed co-defendant Kent Foster's affidavit. Neither defendant has made the necessary showing for filing what is clearly a surreply, a point by point response to Plaintiff's reply, namely that the defendant Kent Foster was unavailable to provide his affidavit when the two defendants opposed Plaintiffs' motion for remand.

To the extent the Court considers this affidavit, it establishes that Foster was available to provide an affidavit at that time Defendants filed their opposition pleadings and, as will be shown, the affidavit is not to be given any weight because Mr. Foster's claims about his treatment in his affidavit are impeached by his testimony and that of his personal assistant in

recent depositions in a civil case in Texas.

Finally, American Cellular in its "surreply" offers the unusual explanation that the "indispensable party" it named in its answer and affirmative defenses is none other than co-defendant Kent Foster, such that diversity still exists. This argument is offered in response to the Reply wherein Plaintiffs claimed that the "mystery" indispensable party was likely an escrow agent. Regardless of American Cellular's explanation,[1] Mr. Foster's recent deposition testimony reveals that there is still an unidentified, indispensable party. Foster testified a few weeks ago in his deposition that American Cellular held back millions of dollars at the closing that were placed in escrow at a bank.

As this Court is aware, Plaintiffs' claim is based on a Settlement Agreement with Foster that provides that they would be paid funds at the closing and the pre-closing promises of Defendants, Lone Star and American Cellular, that they would place this money into escrow or pay it into the Court's registry. In order to avoid including this issue in this pleading, undersigned asked counsel for American Cellular whether funds were placed into escrow and to disclose the name and location of the bank. Counsel for American Cellular stated that he was not in a position to answer either question.

**I.      BACKGROUND**

On August 16, Plaintiffs filed their Motion to Remand. Two days later, Defendant American Cellular filed its Answer including its indispensable party defense. On August 30, American Cellular and Lone Star filed oppositions to the motion to remand. In reply, Plaintiffs

---

[1] All the defendants have been served and have answered the complaint. Lone Star filed its Answer on August 18, 2006. Foster was served on September 8, 2006. He filed an Answer on September 28, in which he joined in the previously filed Notice of Removal. Thus, the issue whether the citizenship of an unserved defendant is considered for removal purposes is moot. Foster's citizenship must be considered in determining this court's diversity jurisdiction.

pointed out that Defendants had not filed with their oppositions an affidavit from Foster attesting to his domicile and intent to remain in Texas, critical elements to the citizenship inquiry. They also notified the Court of the indispensable party defense American Cellular had neglected to disclose in its opposition. Plaintiffs argued that American Cellular and Lone Star had failed to carry their heavy burden of proving diversity jurisdiction without an affidavit from Foster and without proving diversity jurisdiction as to the indispensable party.

On September 18, Lone Star filed a document entitled Affidavit of Kent S. Foster Supplementing Opposition of Defendant Lone Star to Motion to Remand. Lone Star did not seek leave of court to file this document. This document is properly characterized as a surreply filed without the court's permission, a point by point response to each of Plaintiff's arguments: ("Mr. Herzog showed me parts of the "Plaintiffs Reply to Opposition to Motion to Remand" and I was incensed…) Affidavit at ¶6, pg. 2.

On September 21, American Cellular filed a motion for leave to supplement its opposition to place the same affidavit before the Court. The supplemental pleading relies on the Affidavit of Kent S. Foster, filed previously and impermissibly by Lone Star. See Memorandum in Support of Its Supplemental Opposition at ¶5 ("As set forth in the Affidavit of Kent S. Foster Supplementing Opposition of Defendant Lone Star Wireless, Inc. to Motion to Remand . . ."). The supplemental pleading also rebuts the arguments raised by Plaintiffs in their reply. Id. at ¶¶4-6. Dressed down, American Cellular's motion is simply a request to file a surreply. Plaintiffs oppose this request.

    II.    <u>**American Cellular Corporation's Requested Surreply Should Be Denied**</u>

A party must seek the Court's permission before filing a surreply. <u>United States ex rel. A. Scott Pogue v. Diabetes Treatment Centers of America</u>, 238 F.Supp.2d 270, 276-77 (D.D.C.

3

2002). "The standard for granting a leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001). If the matters presented in the surreply could have been raised in the moving party's opposition, a surreply is denied. See Diabetes Treatment Centers, 238 F.Supp.2d at 276-77.

American Cellular seeks through its surreply to rely on Foster's affidavit and to identify the indispensable party. American Cellular had ample opportunity to address these issues in its opposition. For strategic reasons, it chose not to.[2] The surreply should be denied.

*A. American Cellular And Lone Star Could Have Filed An Affidavit From Foster To Establish His Citizenship In Their Oppositions But Chose Not To.*

American Cellular and Lone Star have the burden to establish this court's jurisdiction for removal purposes. They were required to establish Foster's citizenship in their oppositions to Plaintiffs' motion to remand. They chose not to rely on an affidavit from Foster but instead chose to rely on the heresay affidavit of Foster's Texas lawyer, Harry Herzog. Mr. Herzog has since filed his notice of appearance in this case. They filed Foster's affidavit in an attempt to counter the Reply's heresay argument with respect to Herzog's affidavit.

Moreover, to the extent this Court considers Foster's affidavit it establishes that Foster was available to provide an affidavit when Defendants opposed the Motion to Remand. The affidavit is impeached in material respects by recent deposition testimony of Foster and his

---

[2] Foster had not been served when Defendants opposed Plaintiffs' Motion to Remand. And despite his protests to the contrary he admits he was still unwilling at the time he signed his affidavit to appear: "Under ordinary circumstances I would voluntarily appear and answer in this lawsuit. However, because it is obvious that the lawyers for Mr. Lewis and Mr. Bauguess have been flooding the Court with false statements about me…..I refuse to voluntarily submit to their abuse and harassment." Affidavit, para. 5, pg. 2. "I have not authorized Mr. Herzog to accept service on my behalf, or to appear in the lawsuit for me." Id. At para. 3, page 3. "If they insist they [can] continue their efforts to try to personally serve me at the hospital." Id.

personal assistant in a Texas Civil proceeding and, as a result, should not be accorded any weight.

      B.    *Foster's Affidavit Establishes His Availability to Provide a Declaration*

Instead of proving his unavailability, Foster's affidavit establishes the contrary. Nowhere in his affidavit does Foster claim he was unable to sign an affidavit when Defendants were opposing Plaintiffs' Motion to Remand. Instead he admits that in the midst of his treatment for cancer he was well enough to "sign the closing documents [for the sale of his business that gave rise to Plaintiffs' claim]. He could have signed an affidavit if he was hospitalized when Defendants filed their oppositions just as he was when he signed the closing documents.

His affidavit establishes that he is able to conduct business during his treatment. For example, the day he signed the affidavit Foster states that he was in his lawyer's office for a deposition.[3] He also states in his affidavit that he was well enough to try a $22,000,000 claim "while I was in treatment". Affidavit at para 4, pg 2. Moreover, as will be seen, far from his claim in his Affidavit that he is bed-ridden in Texas, he has been traveling on several occasions to conduct business including out of state travel to complete an educational degree.

      C.    *Foster's Affidavit Is Unreliable.*

In any event, if the Court considers Kent Foster's affidavit, the court should accord it no weight because it has been impeached by recent deposition testimony from Foster and his executive assistant, Angela Davis. In his affidavit, Foster declared under oath that he has been

---

[3] Other plaintiffs have sued Foster for his failure to pay them, as promised, at the closing. Foster's deposition was taken approximately two weeks ago, on September 13, in connection with one of those lawsuits. See Qualls v. Concho Cellular Tel. Co., No. 06-453A (Tex. D. Ct., Kerr Cty 2006). In that matter, in addition to Laura Qualls' claim for breach of an employment contract, Charles LaCroix, the COO of Foster's company, Concho Cellular Telephone Co., claims that Foster breached a settlement agreement they executed in which Foster promised to pay him at the closing. Upon information and belief, a Texas law firm, Winstaed, that represented Foster in his negotiations with American Cellular that resulted in the sale of his cellular system for approximately $25 million has a pending suit against Foster for approximately $1 million in legal fees. Upon further information and belief, the law firm of Sonnenschein Nath & Rosenthal has a lawsuit pending against Foster for approximately $3 million in

confined to a hospital bed for almost the entirety of 2006 and suggested that his death is imminent.[4]

In contrast, Foster and Ms. Davis painted a different picture of Foster's health in 2006 at their depositions on September 13 and 14, 2006 respectively. Testimony Foster gave under oath at his deposition, the same day he signed his affidavit, reveals that he felt well enough to voluntarily discontinue treatment for four weeks in January 2006 so he could close the $25 million deal with American Cellular, a company wholy owned by Dobson.[5] The closing is the one that gave rise to his payment obligations to Plaintiffs under their Settlement Agreement. Ms. Davis' testimony reveals that Foster was well enough to travel with her to South Padre Island, Texas to attend a leadership conference in May 2006 and to Tufts University in Massachusetts in July 2006 to complete a masters of arts degree.[6] Indeed, Foster's completion of a master's

---

[4] Foster declared under oath in his affidavit dated September 13:

For at least 300 days per year, for the last 4 years, I've been physically present in Texas. It is probably closer to 360-365 days per year. . . . "I've intended to be here until I was cured…I am not at a stage when my cancer cannot be cured and I intend and expect to spend everyday from now until my death in Texas… [ paragraph 2 pg 2.] I want this Court to know the truth; I was well enough in May that I signed the closing documents from my hospital bed. . . . It was exhausting. [ paragraph 6, pg 2] My "full lifestyle" . . . has limited me to a bed for almost this entire year. [para 1, pg 3] I would much rather Mr. Lewis and Mr. Bauguess litigate with my Independent Executor and leave me alone to die in peace. I have absolutely no intention of being harassed by them with litigation as I leave this earth . . . . [ para 3, pg 3]

[5] The following colloquy occurred at Foster's deposition in response to a question inquiring when he told Mr. LaCroix that he would not honor his employment agreement dated August 3, 2005:

A: Oh, probably when I decided voluntarily to take a breather from my treatment and go over and try to get this deal closed with Dobson.
Q: When was that?
A: Around Christmastime, January. . . . I took off for four weeks
. . .
A: . . . I know it was January because my doctors were all upset that I missed, you know, a couple of treatment times.

See deposition pages of the deposition of Kent S. Foster, dated September 13, 2006, attached hereto at Exhibit 1, at 26-27. Dobson Communications Corporation is the parent company to American Cellular Corporation. See, e.g., id. at 29-30.

[6] Ms. Davis testified:
Q: Did you attend the leadership conference in South Padre Island this past spring?
A: Yes, sir.

degree program hardly comports with the image of a man waiting to "leave this earth." Foster's false statements regarding his health renders his declaration unreliable.

Furthermore, Foster's deposition testimony makes clear that he has more interests in the District of Columbia that evidence his citizenship here than previously disclosed. In Naegele, cited in Plaintiffs' reply brief at 2, this Court set forth "a number of generally accepted indicia of domiciliary status." Naegele v. Albers, 355 F.Supp.2d 129, 135 (D.D.C. 2005). Those indicia include "ownership of personal property in a given state; bank accounts and club membership." Id. "Once a party presents to the court evidence of substantial indicia of domiciliary status, the party is entitled to a presumption that it has established a domicile." Id.

Foster testified at his deposition that in addition to the residence he owns in the District of Columbia, he also has "other interests in DC," which include a charitable trust he established in the District of Columbia that uses a trustee at PNC Bank and rental properties that he described

---

    Q: When was that?
    A: I think it was like May 17th.
    Q: And Kent Foster was there?
    A: Yes, sir.
    . . .
    Q: What was the purpose of that meeting?
    A: I understood that it was to bring in investors, basically, introduce them to our business plan.

See deposition pages of Angela Marie Davis, dated September 14, 2006, attached hereto at Exhibit 2 at 43-44. As executive assistant, Ms. Davis was responsible for taking care of Foster's personal and business affairs. Id. at 6-7. Ms. Davis also testified about Foster's travel in July 2006:

    Q: Was Kent Foster traveling in July?
    A: Yes.
    Q: Where?
    A: Boston. Actually, Medford, Massachusetts.
    Q: To see Optasite?
    A: No, it was for school, I believe. He was in a global master of arts program there, and they were finishing up their residency.
    Q: What university is that?
    A: Tufts University.

Id. at 39-40.

as owing "back rents."[7]  Additionally, Ms. Davis testified that Foster has personal bank accounts in the District of Columbia at PNC Bank, and he uses a "personal banker" there.  Exh. 2 at 28.  This evidence constitutes substantial indicia of domiciliary status in the District of Columbia and entitles Plaintiffs to a presumption that Foster's domicile is in the District of Columbia.

> D.  *American Cellular Chose Not To Identify The Indispensable Party And Therefore Failed To Establish Diversity With Respect To That Party.*

American Cellular disclosed its indispensable party defense for the first time in its Answer, filed two days after Plaintiffs' motion to remand.  It then chose not apprise the court of this defense or to identify the necessary party in its opposition although it could have.  The first opportunity Plaintiffs had to alert the court to this issue was in their reply.  They explained that without knowing the citizenship of the missing party, defendants could not carry their burden of proving this court's diversity jurisdiction.

Plaintiffs suggested in their reply that the indispensable party American Cellular referenced in its answer is the escrow agent that holds money that should have been paid to Plaintiffs at the closing.  Plaintiffs explained that the Settlement Agreement required Foster to pay them at the closing.  He failed to do so.  Plaintiffs then attached letters from both American Cellular and Lone Star in which each represented to Plaintiffs that they would place $2 million into escrow or interplead it into the court's registry at the closing for the benefit of Plaintiffs.  Plaintiffs brought suit against the Defendants for the failure to honor their promises.

---

[7] Foster testified:

> A:  I have a place of residence there that we had to make sure it's – nobody had broken into. . . . [T]hen she took care of some – I have other interests in DC.  She went by to negotiate and try to take care of those for back rents, things like that.

Id. at 8-9.  He also testified that he established a charitable trust, Kent Foster Charitable Trust, in the District of Columbia, and its trustee is PNC Bank in the District of Columbia.  Id. at 16-17

However, Foster testified in his recent deposition that funds were withheld at closing and placed at a bank.[8]

Plaintiffs further represents to counsel for American Cellular has stated that he is unable to confirm that funds were placed into escrow, the name of the bank or its location. Plaintiffs still do not know who the escrow agent is, but perhaps more importantly for the purposes of this motion, this Court does not know the identity and location of an indispensable party, the bank that is holding funds. See <u>Cloverleaf Standardbred Owners Assoc., Inc., v. The National Bank of Washington</u>, 699 F.2d 1274, (D.C. Cir. 1983) (both party to contract and bank holding money of contracting party necessary parties to breach of contract lawsuit).  American Cellular has not established diversity with respect to this escrow agent despite having had ample opportunity to do so.

American Cellular has failed to satisfy the standard for filing a surreply.  Its motion for leave should be denied.

Respectfully submitted,

_____
William H. Crispin (D.C. Bar No. 363770)
Lauren A. Greenberg (D.C. Bar No. 466846)
CRISPIN & ASSOCIATES, PLLC
555 13th Street, N.W., Suite 420W
Washington, D.C. 20004
(202) 828-0152 – phone
(202) 828-0155 – facsimile
wcrispin@crispinlaw.com - e-mail

October 2, 2006                                    Attorneys for Plaintiffs

---

[8] Foster testified that "Dobson has several million dollars in a holdback," (exh. 1at 65) and that "just like . . . Dobson did on a lot of matters, they had a bank . . . act as escrow officer." Id. at 31.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Darrell Bauguess et al.,  )<br>  )<br>  Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>Kent S. Foster et al.  )<br>  )<br>  Defendants.  ) | Case No.: 1:06CV01424/ EGS |

ORDER

Upon consideration of Defendant American Cellular's Motion for Leave to File A Supplemental Opposition to Plaintiffs Motion to Remand, and an opposition filed by Plaintiffs, on this _____ day of _____, 2006:

IT IS HEREBY ORDERED that Defendant American Cellular's Motion for Leave to File A Supplemental Opposition is DENIED.

IT IS SO ORDERED.

_____
U.S. District Court Judge