**EXHIBIT 1**

Page 1

NO. 06-453A

| | |
|---|---|
| LAURA L. QUALLS, | ) IN THE DISTRICT COURT |
| Plaintiff | ) |
| VS. | ) KERR COUNTY, TEXAS |
| CONCHO CELLULAR TELEPHONE CO., D/B/A CELLULAR ONE, SERVING CENTRAL TEXAS AND THE HILL COUNTRY and KENT FOSTER, | ) |
| Defendants | ) 216TH JUDICIAL DISTRICT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL VIDEOTAPED DEPOSITION OF
KENT FOSTER
Volume 1
September 13, 2006

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Reported by:  Michelle R. Propps, CSR
59599

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 2

```
 1        ORAL VIDEOTAPED DEPOSITION OF KENT FOSTER, VOLUME 1,
 2   produced as a witness at the instance of the PLAINTIFF,
 3   and duly sworn, was taken in the above-styled and numbered
 4   cause on September 13, 2006, from 2:00 p.m. to 4:05 p.m.,
 5   before Michelle R. Propps, CSR in and for the State of
 6   Texas, reported by machine shorthand, at the Law Offices
 7   of Herzog, Carp & McManus, 7500 San Felipe, Suite 675,
 8   Houston, Texas, pursuant to the Texas Rules of Civil
 9   Procedure.
10                    A P P E A R A N C E S
11   FOR THE PLAINTIFF:
         MR. RICHARD L. ELLISON
12       Richard L. Ellison, P.C.
         327 Earl Garrett, Suite 106
13       Kerrville, Texas 78028
         Fax: 830.792.5602
14
     FOR THE DEFENDANTS CONCHO CELLULAR TELEPHONE CO., D/B/A
15   CELLULAR ONE, SERVING CENTRAL TEXAS AND THE HILL
     COUNTRY:
16       MR. MATTHEW PEARSON    (Not Present)
         Gravely & Pearson
17       111 Soledad, Suite 300
         San Antonio, Texas 78205
18       Fax: 210.472.1110
19   FOR THE DEFENDANT KENT FOSTER:
         MR. HARRY HERZOG
20          - and -
         MR. DAN McMANUS
21       Herzog, Carp & McManus
         7500 San Felipe, Suite 675
22       Houston, Texas 77063-1711
         Fax: 713.781.4797
23
24   ALSO PRESENT:
         Ms. Lil Ellison, Videographer
25       Mr. Charles LaCroix
```

Page 3

1                           INDEX
                                                          PAGE
2    Appearances  ..................................  2
3
     KENT FOSTER
4
          EXAMINATION BY MR. RICHARD L. ELLISON.........  4
5
6    Changes and Signature............................. 72
     Reporter's Certificate............................ 74
7    Reporter's Further Certification.................. 76

8                          EXHIBITS

9    NO.         DESCRIPTION                              PAGE

10   1    Various E-Mails Between Foster and LaCroix.......69

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Sunbelt Reporting & Litigation Services
Houston  Austin  Corpus Christi  Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)

ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 4

1                    KENT FOSTER,
2  having first been duly sworn, testified as follows:
3                     EXAMINATION
4  QUESTIONS BY MR. RICHARD L. ELLISON:
5       Q.  Mr. Foster, my name is Richard Ellison.  I'm
6  the attorney for Laura Qualls and for Charles LaCroix,
7  who have sued you and Concho in this lawsuit.  So do you
8  understand who I am?
9       A.  Yes, sir.
10      Q.  Okay.  Are you on any medication today that
11 would affect your ability to have mental clarity?
12      A.  I'm on medication.  I think I'm of sound mind.
13      Q.  Okay.
14      A.  And I'm -- I'm here to give a deposition and
15 tell you the truth.
16      Q.  Okay.  If I ask a question and you don't
17 understand it, would you tell me that you don't
18 understand?
19      A.  Yes, sir, I will.
20      Q.  Okay.  And you're doing good so far, but if
21 you'll continue to answer with words.  And some people
22 say "Uh-huh" or "Huh-uh" or nod their head, so if you'll
23 just answer yes or no or whatever is appropriate, okay?
24      A.  Yes, sir.
25      Q.  All right.  Where do you live?

Sunbelt Reporting & Litigation Services
Houston  Austin  Corpus Christi  Dallas/Fort Worth

Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)                ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 8

```
 1   And they were no longer directors as of July.  I do not
 2   know whether anybody was substituted in their capacity
 3   or not because I was not active with the company.
 4        Q.   Okay.  When Jana Smith was president for the
 5   purpose of signing papers, did you make that decision?
 6        A.   I think lawyers did.
 7        Q.   Did you?
 8        A.   I was informed about it, yes.
 9        Q.   Did -- did you, as the sole shareholder, vote
10   to appoint her president?
11        A.   I didn't object to it.
12        Q.   Did you approve it?
13        A.   I do not recall.
14        Q.   What is Jana Smith's position now?
15        A.   Same as before, office manager.
16        Q.   So she's not the president now?
17        A.   Of Concho?
18        Q.   Yes, sir.
19        A.   Not to my knowledge.
20        Q.   Is she the president of any of the companies
21   that you own?
22        A.   Not to my knowledge.
23        Q.   Why was she in Washington DC?
24        A.   I have a place of residence there that we had
25   to make sure it's -- nobody had broken into.  There had
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 9

1  been a flood in DC, and a lot of the neighbors' homes
2  had been flooded. And it's -- then she took care of
3  some -- I have other interests in DC. She went by to
4  negotiate and try to take care of those for back rents,
5  things like that.
6      Q.  Did she do any Concho business when she was
7  there?
8      A.  I think so.
9      Q.  What did she do?
10     A.  Consulted with some attorneys.
11     Q.  Was there any -- and I don't want to know
12 about attorney/client communications or what she
13 discussed with lawyers. Was there any -- were there any
14 business transactions done while she was there?
15     A.  She might have documented things that had
16 already been done while she was there. I -- I have not
17 talked to her. She's not back from her trip.
18     Q.  What -- what kind of things had been done that
19 she needed to document?
20     A.  Taking care of some claims against Concho, you
21 know, delivering, you know, checks or getting releases.
22     Q.  Whose claims?
23     A.  I think the main one was from Stein, Mitchell.
24     Q.  Who's that?
25     A.  Stein, Mitchell is a law firm.

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 16

1   money into?
2       A.   I've had a foundation set up for several
3   years.
4       Q.   You have?
5       A.   I have, yes, sir.
6       Q.   What's the name of it?
7       A.   Kent Foster Charitable Trust.
8       Q.   What -- is it set up under a state -- state
9   law?
10      A.   It is.
11      Q.   Which state?
12      A.   District of Columbia.  It's not a state, but
13  under District of Columbia.
14      Q.   Who's the trustee?
15      A.   PNC Bank.
16      Q.   In DC?
17      A.   Well, they're nationwide.  It was Riggs Bank
18  originally.
19      Q.   What's the purpose of that foundation?
20      A.   To make charitable donations.  They -- it
21  works like this:  Different charities make applications.
22  There's a vetting process.  Then they bring to the Board
23  of Trustees of the foundation to vote up or down on the
24  different charitable contributions to be made.
25      Q.   When you got the funds from these two sales --

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 17

1   A.   Uh-huh.
2   Q.   -- did you hang onto any of it or did you move
3   money out?
4   A.   No, I have not moved money out.
5   Q.   So this six or seven million that you got,
6   you've still got it?
7   A.   Well, I don't have it all because I've been
8   paying, you know, creditors off.
9   Q.   Where do you keep your money?
10  A.   I don't keep it.  The accountants keep it.
11  Q.   Who does?
12  A.   Larry Greenwald.
13  Q.   And who is Greenwald?
14  A.   He's with Rocky Mountain Consultants.  And
15  they're out of Denver, Colorado.
16  Q.   Does he manage your money for you?
17  A.   No.  My money is managed by a financial
18  management firm also located in Denver.  I don't recall
19  the exact name.  Vector or something like that.  I can
20  get you the right name.
21  Q.   Are they associated with Greenwald?
22  A.   He recommended them.
23  Q.   Okay.  Is Greenwald on -- on the board of
24  directors of Concho?
25  A.   I am not sure.  I know that when the --

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

```
 1      Q.   Okay.  And you didn't tell Mr. LaCroix, "Hey,
 2   Huryan shouldn't have done that"?
 3      A.   Mr. LaCroix and I had several discussions
 4   about Mr. Huryan's authority and what he should have
 5   done and should not have done.  I don't think we ever
 6   talked about the employment agreement.
 7      Q.   Okay.
 8      A.   Oh, we did talk about the employment agreement
 9   when we negotiated our settlement.
10      Q.   Okay.  Tell me about that.  When was -- when
11   were those negotiations?
12      A.   I told Mr. LaCroix I would not honor that
13   agreement because I wasn't that aware of it, once I saw
14   it.  And they were up in my office.  I said I'd pay him
15   something and we negotiated a settlement amount.
16      Q.   When did you tell Mr. LaCroix that you would
17   not honor the -- I'm sorry.  When did you tell Charles
18   LaCroix that you would not honor the employment
19   agreement that Huryan signed?
20      A.   On many occasions.
21      Q.   When was the first time?
22      A.   Oh, probably when I decided voluntarily to
23   take a breather from my treatment and go over and try to
24   get this deal closed with Dobson.
25      Q.   When was that?
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)

ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 27

```
 1      A.   Around Christmastime, January.  My years pass
 2  by so fast.  About a year ago.  I took off for four
 3  weeks.
 4      Q.   Christmas of '05 or '04?
 5      A.   I'm not sure.  I know it was January because
 6  my doctors were all upset that I missed, you know, a
 7  couple of treatment times.
 8      Q.   So it was January when you first told Mr.
 9  LaCroix, "I'm not going to honor this employment
10  agreement"?
11      A.   No.  I actually told -- Jim Ross was the
12  managing person for Concho.  I told Jim Ross I never --
13  wouldn't honor it.  He didn't blame me and said "I
14  wouldn't honor it either."  And he informed Mr. LaCroix
15  that he didn't think I'd honor that agreement.
16           MR. ELLISON:  I -- I object to the
17  nonresponsiveness.
18      Q.   (By Mr. Ellison)  When did you first tell
19  Charles LaCroix, "I will not honor your employment
20  agreement"?
21      A.   When I came back.  Like I side, I spent about
22  four weeks there in Kerrville.  And I'm ready to take my
23  break.
24           MR. ELLISON:  Okay.  Let's go off the
25  record.
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

1      (A brief recess was taken.)
2      Q.   (By Mr. Ellison)  May I come around there
3  again?
4      A.   Sure.  Absolutely.
5      Q.   Looking at exhibits to Jana Smith's deposition
6  again.  Is Exhibit 5 a copy of the Compromise and
7  Settlement Agreement you were talking about before we
8  took the break?
9      A.   Yes, sir, it is.
10     Q.   And is that your signature on it?
11     A.   As president of Concho Cellular Telephone
12 Company, it is.
13     Q.   Who wrote this Compromise and Settlement
14 Agreement?
15     A.   Well, I did the first draft.  Mr. LaCroix made
16 some changes.  And we incorporated the changes and it
17 was typed there at the office.
18     Q.   Okay.  Typed at Concho's office?
19     A.   Correct.
20     Q.   Now, Concho paid Mr. Foster the bonus that's
21 referred to in Paragraph 5 --
22          MR. HERZOG:  I think you mean Mr.
23 LaCroix.
24          MR. ELLISON:  I'm sorry.  Yes.  Thank
25 you.

Page 29

1          MR. HERZOG:  He keeps trying to get his
2  company to pay him a bonus.
3      Q.  (By Mr. Ellison)  Paragraph 5 says that,
4  "Concho has, before the execution of this agreement,
5  wired all bonus money due employee in the amount of
6  $28,900."
7      A.  Correct.  We did that, plus 100,000.
8      Q.  Okay.  And the same paragraph continues that,
9  "Employee will receive within eight business days of the
10  execution of this agreement the sum of $100,000 payable
11  in two separate wires, as funds are available for wire
12  from Concho to employee's bank account."  Did I read
13  that right?
14      A.  That's correct.
15      Q.  And did Concho do that?
16      A.  We did.
17      Q.  Then Paragraph 6 pays, "Concho will pay upon
18  the final sale to Dobson American Communications the sum
19  of $250,000, per wiring instructions received from
20  employee."  Did I read that correctly?
21      A.  That's correct.
22      Q.  Where it says "Dobson American
23  Communications," is that the same as Dobson American
24  Cellular Corporation?
25      A.  What Dobson did, they had the right to make

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 30

1 another entity and they closed -- or changed all the
2 paperwork to their wholly owned subsidiary, American
3 Communications, Inc.
4      Q.   Okay.
5      A.   So when we refer to a sale to Dobson, it
6 really wasn't for Dobson.  American Communications is
7 the one who --
8      Q.   Okay.  So that -- you did and -- and we've
9 already discussed the final sale has gone through,
10 although there's --
11     A.   Final sale has not gone through, but the
12 250,000 was offered to Mr. LaCroix.
13     Q.   When did you -- what do you mean, the 250,000
14 was offered to Mr. LaCroix?
15     A.   Mr. LaCroix came to my office in Kerrville,
16 Texas.  And I explained to him, like I explained to you
17 earlier, there was no final closing, but that we did
18 receive money from Dobson.  And that, you know, as far
19 as I was concerned, if he wanted to get a lawyer and
20 find a bank to escrow the money until the final closing,
21 that would be fine with me.
22     Q.   When did you tell him that?
23     A.   In my office when he came to see me.
24     Q.   When?
25     A.   I don't know the exact date.  He should know.

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 31

```
 1        Q.   Okay.  I need to know what your information is
 2   or what your knowledge is and what I can expect if you
 3   testify in a hearing or at trial.  So I'm not trying to
 4   argue with you, but --
 5        A.   My -- my recollection is that I summonsed Mr.
 6   LaCroix to my office on other matters.  And he had ask
 7   me if we had -- I had a second closing.  I explained to
 8   him, just like I explained to you, that technically we
 9   have not had a second closing.  But because of the
10   greenmailers filing their protest to the transfer from
11   Concho to Dobson -- or really to American Cellular, but
12   that we did receive funds.  And just like, you know,
13   Dobson did on a lot of matters, they had a bank -- he
14   had a bank that would act as escrow officer, I'd be glad
15   to get the money escrowed.  So that when the final
16   closing, when the greenmailer thing -- I said it could
17   be eight months, it could be a year, then your money
18   would be there.
19        Q.   This agreement, Compromise Settlement
20   Agreement is dated June 9th, 2006, correct?
21        A.   Correct.
22        Q.   So we know this conversation that you're
23   describing with Mr. LaCroix was sometime after that,
24   correct?
25        A.   Correct.
```

Page 61

```
 1   that.
 2        Q.   What's -- what's the status of the litigation
 3   with the Sonneschien law firm?
 4        A.   Motion for Summary Judgment.
 5        Q.   By you?
 6        A.   No.  By them.
 7             MR. HERZOG:  What does that have to do
 8   with this case?
 9        Q.   (By Mr. Ellison)  Did you discuss, Mr.
10   LaCroix's employment agreement with Dobson?
11        A.   I do not recall.
12        Q.   Who was negotiating with Dobson?
13        A.   First, it was the Winstead law firm, Winstead,
14   Minick, Sechrist.  Then it was David Kaufman,
15   K-A-U-F-M-A-N.
16        Q.   What firm is he with?
17        A.   Brown, Nietert & Kaufman.
18        Q.   Is that in Texas?
19        A.   Washington DC.
20             MR. HERZOG:  N-I-E-T-E-R-T, Nietert.
21        Q.   (By Mr. Ellison)  They were negotiating for
22   Concho for -- for the sale of assets to Dobson?
23        A.   And so was Optasite, Jim Ross.  And so was the
24   broker named Charlie Urich with Raymond James & Company.
25        Q.   Is -- does the Winstead firm claim that you --
```

Sunbelt Reporting & Litigation Services
Houston  Austin  Corpus Christi  Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

1  Dobson got?
2       A.   What do you mean by that?
3       Q.   Is Dobson -- does Dobson have money in escrow
4  or in a holdback?
5       A.   Yes, they do.
6       Q.   How much?
7       A.   I don't recall.  It's several million.
8       Q.   Did you discuss Laura Qualls with -- with Ross
9  or Eisenstein?
10      A.   Yes.
11      Q.   And what was the general substance of that
12 discussion?
13      A.   I told them that I had never signed an
14 employment agreement with her.  She came up to my office
15 a couple of times to ask me to sign one and I refused.
16      Q.   Did you sign an employment agreement with Jana
17 Smith?
18      A.   Never.
19      Q.   Have you in the last year opened bank accounts
20 offshore?
21      A.   No, sir.
22      Q.   You know what I mean by "offshore"?
23      A.   I do.
24      Q.   Has Greenwald opened any for you?
25      A.   No, sir.

Sunbelt Reporting & Litigation Services
Houston   Austin   Corpus Christi   Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

Page 74

NO. 06-453A

| | |
|---|---|
| LAURA L. QUALLS | ) IN THE DISTRICT COURT |
| Plaintiffs | ) |
| VS. | ) |
| | ) KERR COUNTY, TEXAS |
| CONCHO CELLULAR TELEPHONE CO., D/B/A CELLULAR ONE, SERVING CENTRAL TEXAS AND THE HILL COUNTRY, KENT FOSTER | ) |
| Defendants | ) 216TH JUDICIAL DISTRICT |

REPORTER'S CERTIFICATION
DEPOSITION OF KENT FOSTER
September 13, 2006

I, MICHELLE R. PROPPS, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, KENT FOSTER, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on _____ to the witness or to the attorney for the witness for examination, signature and return to me by _____;

That the amount of time used by each party at the deposition is as follows:
MR. RICHARD L. ELLISON: 1:44

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

MR. RICHARD L. ELLISON, Fax: 830.792.5602, Attorney for Plaintiff
MR. MATTHEW PEARSON, Fax: 210.472.1110, Attorney for Defendant

Page 75

MR. HARRY HERZOG, Fax: 713.781.4797, Attorney for Defendant

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this 20th day of September, 2006.

Michelle R. Propps, Texas CSR 2738
Expiration Date:  12-31-06
Firm Registration No. 300
6575 West Loop South, Suite 580
Bellaire, Texas  77401
(713) 667-0763

Sunbelt Reporting & Litigation Services
Houston  Austin  Corpus Christi  Dallas/Fort Worth
Electronically signed by Michelle Propps (601-110-259-7809)
Electronically signed by Michelle Propps (601-110-259-7809)
ac7df9d2-9ee2-4410-91d3-3d36c0f14d65

FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition/errata sheet was/was not returned to the deposition officer signed/unsigned on _____;

If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to _____, Custodial Attorney;

That $_____ is the deposition officer's charges to the _____ for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3, and that a copy of this certificate was served on all parties shown herein on _____ and filed with the Clerk.

Certified to by me this _____ day of _____, _____.

Michelle R. Propps, Texas CSR 2738
Expiration Date: 12-31-06
Firm Registration No. 300
6575 West Loop South, Suite 580
Bellaire, Texas 77401
(713) 667-0763